UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) XOUCHI JONATHAN THAO, SPECIAL ADMINISTRATOR FOR THE ESTATE OF KONGCHI JUSTIN THAO, <br><br> PLAINTIFF, <br><br> v. <br><br> (2) GRADY COUNTY CRIMINAL JUSTICE AUTHORITY, ET AL. <br><br> DEFENDANTS. | CASE NO.: CIV-19-1175-JD |

**PLAINTIFF'S MOTION TO EXCLUDE OR LIMIT THE OPINIONS OF DEFENSE EXPERT DR. JEFFERY REAMES**

Pursuant to the Court's Amended Scheduling Order (ECF 81), Plaintiff Xouchi Jonathan Thao, as Special Administrator for the Estate of Kongchi Justin Thao, files this Motion to Exclude or Limit the testimony of Dr. Jeffery Reames based upon *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## I.

### INTRODUCTION

Dr. Reames is a physician who practices in the field of emergency medicine. (ECF 61-1). He does not practice in the fields of correctional medicine or psychiatry and claims no experience in those areas. Dr. Reames may be qualified to render opinions in the field of emergency medicine in a hospital setting;

however, the opinions he intends to offer here exceed the limits on subject-matter expertise. *See, e.g., Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969-971 (10th Cir. 2001) (affirming exclusion of orthopedic surgeon in case involving intramedullary nailing and adequacy of warnings); *see also Alexander v. Smith & Nephew*, 98 F. Supp. 2d 1310, 1315 (N.D. Okla. 2000) ("the simple possession of a medical degree is insufficient to qualify a physician to testify as to the advantage of a spinal fixation device, the medical causation of spine-related ailments, or the mechanical functioning of an orthopedic implantation device").

In addition to being unqualified to offer opinions in this case, none of the opinions he does provide are relevant to the issues to be decided by the jury. Plaintiff alleges that Defendant Grady County Criminal Justice Authority (GCCJA) lacked adequate policies, training, and supervision to identify and address decedent Justin Thao's mental health crisis that led to his suicide[1] and that its facility was unreasonably dangerous, such that GCCJA was deliberately indifferent to Justin's[2] serious medical need and serious risk of harm. Dr. Reames's opinions do not bear upon any of these issues.

---

[1] Plaintiff also asserts an excessive use of force claim that is not the subject of Dr. Reames's opinion.
[2] Plaintiff refers to Justin Thao by his first name to avoid confusion with his brother, Jonathan Thao, the administrator of Justin's estate.

## II.

### DIRECT OPINIONS

**OPINION 1**: ACQUISITION OF CONTRABAND IN A CORRECTIONAL SETTING

In his first opinion, Dr. Reames opines that Justin obtained "methamphetamine" at some point "prior to his arrival at the Grady County Jail." (ECF 61-1, p. 2).

Dr. Reames has no expertise in corrections, drug interdiction, contraband, drug-packing, or smuggling, and there is no indication Dr. Reames has any knowledge, education, or training on how drugs and other contraband circulate within a prison economy. Even assuming Dr. Reames had the relevant qualifications to opine about the acquisition of contraband within a correctional setting, his opinion did not identify any methodology for reaching this conclusion, *i.e.*, there is no foundational evidence that Justin acquired drugs before entering GCCJA's custody and there is no explanation supporting Dr. Reames's belief that pre-transfer acquisition of contraband is the most likely scenario. Not only does the opinion fail to explain why pre-transfer acquisition of contraband is the most likely scenario, Dr. Reames provides no analysis to exclude other possibilities, such as acquisition of drugs from GCCJA staff or other transferees. Finally, whether Justin took drugs voluntarily or obtained them prior to or after entering GCCJA's custody is irrelevant to the jail's obligations to maintain adequate policies, training, and

3

supervision to identify and address Justin's mental health crisis, whether or not drug induced.

### OPINION 2: PRIOR HISTORY OF SUBSTANCE USE

In his second bullet point, Dr. Reames intends to testify that Justin had a prior history that included "altered mental status secondary to substance abuse." This is not an opinion but rather Dr. Reames parroting what is already contained in medical records. Regurgitating the content of the medical records does nothing to assist the jury. *See, e.g., N. Am. Specialty Ins. Co. v. Britt Paulk Ins. Agency, Inc.*, 579 F.3d 1106, 1112 (10th Cir. 2009) ("First, evidence must be reliable, and second, it must be helpful to the jury.").

Dr. Reames also opines that Justin's behavior was "consistent with" the effects of methamphetamines. But the source of Justin 's altered mental status is irrelevant to the claims and defenses. Jail staff had a constitutional duty to adequately respond regardless of the reason underlying Justin's behavioral change, and *in fact* they had no actual knowledge of what might be causing Justin's abnormal and delusional behavior in the first instance. Whether Justin was under the influence of methamphetamine is irrelevant to Plaintiff's claims that GCCJA lacked adequate policies, training, and supervision to identify and address Justin's mental health crisis, whether or not drug induced, that led to his suicide. Nor are the opinions relevant to Plaintiff's claim the jail was unreasonably dangerous.

III.

**REBUTTAL OPINIONS**

In addition to the merits opinions, Dr. Reames also seeks to offer opinions about Estate's correctional medical psychiatrist, Dr. Daniels. Again, Dr. Reames has no correctional medical experience or qualifications, and he has no experience in psychiatry.

<u>**FIRST OPINION ON DANIELS**</u>**: NO EVIDENCE OF MENTAL HEALTH CRISIS**

Dr. Daniels offered the opinion that Justin was in an acute mental health crisis. Conversely, Dr. Reames opined that: "It is clear that Mr. Thao was fully orientated to person, place, time" and for that reason, Dr. Reames concluded Justin "had no evidence of a mental health crisis and was in full contact with reality." There are multiple problems with this opinion.

First, Dr. Reames has no education, training, or experience in the field of psychiatry to conclude that orientation categorically precludes someone from experiencing an acute mental health crisis as that phrase is used in the field of psychiatry. Second, Dr. Reames does not reconcile his opinion that Justin was never experiencing an acute mental health crisis and that "he posed no significant threat to himself or others" with his conflicting opinion that Justin "rushed" jail staff, resisted officers, and the undisputed fact that Justin committed suicide. Thus, his lack of qualifications to render an opinion on Justin's mental health crisis and

5

the patent fallacies within that opinion render it unreliable and unhelpful to the jury.

### SECOND OPINION ON DANIELS: SUICIDE IN A CORRECTIONAL SETTING

Dr. Daniels opined that Justin's suicidal statements were sufficient to consider him acutely suicidal in a correctional setting. Dr. Reames counters that because he has personally observed people in the emergency room under the influence of methamphetamine who he did not consider to be a suicide risk, then Justin was not a suicide risk. Again, there are multiple problems with this opinion.

First, the opinion lacks relevancy because the presence or absence of methamphetamine was not revealed until the post-mortem toxicology. In other words, jail staff could not consider the significance of methamphetamine when evaluating Justin's suicidal statements because they had no knowledge of what might be causing Justin's behavioral change. Further, Justin did, in fact, commit suicide, Dr. Reames's emergency room experience notwithstanding, and an opinion about whether methamphetamine "caused" the mental state that led to that result is both confusing to a jury and irrelevant to Plaintiff's claims.

Second, Dr. Reames has no education, training, or experience in a correctional setting to say what circumstances give rise to a risk of suicide. Dr. Reames works in an emergency room, which has nothing in common with a detention facility. The relevant risk in this cases involves suicide in a jail's

isolation cell that had no way to see inside without lifting the cover of a small window, no camera inside, and no one assigned to monitor the person inside that cell; Dr. Reames's opinions about suicidal ideation in an emergency room have no relevance in the correctional setting.

Third, Dr. Reames's opinion is not based on any reliable scientific methodology. Rather, Dr. Reames appears to ground his opinion in his own anecdotal experience, divorced from any validated study, publication, or other authority. Opinions grounded in anecdotal experience advance a classic logical flaw aptly known as the "anecdotal fallacy" where a person uses their own limited personal experience to make sweeping conclusions about a topic. *See, e.g.*, *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1250 (11th Cir. 2005) ("Uncontrolled anecdotal information offers one of the least reliable sources to justify opinions about both general and individual causation.")

**THIRD OPINION ON DANIELS:   DRUG-RELATED BEHAVIORAL CHANGE IN A CORRECTIONAL SETTING**

Dr. Daniel opined that Justin experienced "drug related behavioral changes." Dr. Reames responded by (1) reiterating his prior opinion that such changes "pose no significant threat;" and (2) are "common behaviors seen by jail staff that pose no significant risk of suicide."

Again, Dr. Reames has no correctional medical experience whatsoever, and there is no information disclosed to suggest that he has any education, training, or

7

experience about what constitutes a "common" behavior in a jail setting, or even what constitutes a "significant risk" in a correctional setting. A pretrial detention facility is not an emergency room; the risks, training, education, staffing and circumstances that attend pretrial detention are nothing like the setting in which Dr. Reames practices medicine. While Dr. Reames may be capable of rendering opinions about suicide risk inside an emergency department, he lacks the qualifications to render those opinions in the specific setting of a correctional facility.

For the reasons set forth above, Estate respectfully requests the Court exclude the opinions of Dr. Reames.

Respectfully submitted,

BRYAN & TERRILL

s/*J. Spencer Bryan*
Steven J. Terrill, OBA # 20869
J. Spencer Bryan, OBA # 19419
BRYAN & TERRILL LAW, PLLC
2500 S. Broadway, Suite 122
Edmond, OK 73102
T/F:   (918) 935-2777
Email: sjterrill@bryanterrill.com
Email: jsbryan@bryanterrill.com

and

Glenn Katon (pro hac vice)
Katon.Law
385 Grand Ave., Ste 200
Oakland, CA 94610

                                              T: (510) 463-3350
                                              F: (510) 463-3349
                                        Email: gkaton@katon.law

                                        COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

On July 21, 2023, I served counsel of record in this case with the foregoing document through the Court's ECF filing system.

                                        s/*J. Spencer Bryan*
                                        J. Spencer Bryan