# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| XOUCHI JONATHAN THAO,<br>Special Administrator for the Estate<br>of KONGCHI JUSTIN THAO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-19-1175-JD |
| | ) | |
| GRADY COUNTY CRIMINAL JUSTICE<br>AUTHORITY; et al., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

## DEFENDANT'S MOTION AND BRIEF TO EXCLUDE
## EXPERT TESTIMONY OF ANASSERIL DANIEL, M.D.

---

Andy A. Artus, OBA No. 16169
W.R. Moon, OBA No. 32079
COLLINS, ZORN & WAGNER, PLLC
429 N.E. 50th Street, Second Floor
Oklahoma City, OK  73105
Telephone:   (405) 524-2070
Facsimile:   (405) 524-2078
Email:        aaa@czwlaw.com
              wrm@czwlaw.com

ATTORNEY FOR DEFENDANTS
GRADY COUNTY CRIMINAL
JUSTICE AUTHORITY

July 21, 2023

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES................................................................................ii

I.      INTRODUCTION AND STATEMENT OF THE CASE........................................ 2

II.     ARGUMENT AND AUTHORITY ........................................................... 4

        A.      DR. DANIEL DOES OT HAVE THE REQUISITE
                EXPERIENCE OR TRAINING SUFFICIENT TO
                QUALIFY HIM TO PROVIDE RELIABLE EXPERT
                OPINIONS ........................................................................ 7

        B.      DR. DANIEL'S OPINIONS ARE UNRELIABLE........................................ 10

                1.      Inadmissible Legal Conclusions............................................. 10

                2.      Dr. Daniel is Not Qualified by His Own Gathering of
                        Facts........................................................................ 16

        C.      DR. DANIEL'S TESTIMONY IS UNHELPFUL TO THE
                JURY................................................................................ 18

                1.      Surveillance Video ................................................... 18

                2.      Dr. Daniel's Testimony Should be Excluded Under FRE
                        403 ........................................................................ 20

III.    CONCLUSION ........................................................................ 20

CERTIFICATE OF SERVICE ........................................................... 22

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Anderson v. Suiters*,
    499 F.3d 1228 (10th Cir. 2007) .................................................................... 11
*Broadcourt Capital Corp. v. Summa Medical Corp.*,
    972 F.2d 1183 (10th Cir. 1992) ..................................................................... 6
*Burkhart v. Washington Met. Area Transit Auth.*,
    112 F.3d 1207 (D.C. Cir. 197) ..................................................................... 11
*Christiansen v. City of Tulsa*,
    332 F.3d 1270 (10th Cir. 2003) .................................................................... 10
*Cornwell v. Union Pacific R.R.*,
    No. 08-CV-638-JHP, 2010 WL 3521674 (Sept. 7, 2010) ............................ 18
*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ........................................................................... passim
*Ecker v. Allstate Ins. Co.*,
    No. CIV-00-1367-C, 2001 WL 36113435 (W.D. Okla. Apr. 9, 2001) ........ 19
*Geddes v. Weber Cnty.*,
    No. 20-4083, 2022 WL 3371010 at *4 (10th Cir. 2022) ............................... 14
*Graves v. Mazda Motor Corporation*,
    675 F. Supp. 2d.1082, 1092 (W.D. Okla. 2009) ....................................... 6, 7
*Great Northern Ins. Co. v. Ruiz*,
    688 F.Supp.2d 1362 (S.D. Ga. 2010) ............................................................ 19
*Highland Management, L.P. v. Schneider*,
    379 F.Supp.2d 461 (S.D.N.Y. 2005) ............................................................ 19
*Hudson v. McMillian*,
    503 U.S. 1, 6 (1992) ...................................................................................... 15
*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) ............................... 5
*Lee v. Andersen*,
    616 F.3d 803 (8th Cir. 2010) ........................................................................ 19
*Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago*,
    877 F.2d  (7th Cir. 1989) ......................................................................... 10, 11
*Milne v. USA Cycling Inc.*,
    575 F. 3d 1120 (10th Cir. 2009) ................................................................. 6, 8
*Mitchell v. Gencorp Inc.*,
    165 F.3d 778 (10th Cir. 1999) ...................................................................... 22
*Okland Oil Co. v. Conoco Inc.*,
    144 F.3d 1308 (10th Cir. 1998) .................................................................... 10
*Peterson v. City of Plymouth*,
    60 F.3d 469 (8th Cir. 1995) .......................................................................... 13

*Quinton v. Farmland Indus., Inc.*,
  928 F.2d 335 (10th Cir. 1991) ..................................................................... 5
*Ralston v. Smith & Nephew Richards, Inc.*,
  275 F.3d 965 (10th Cir. 2001) ............................................................... 6, 7, 8
*Redd v. Abla-Reyes*,
  No. 12-465 (MJD/JSM), 2013 WL 6036697 (D. Minn. Nov. 14, 2013) ............... 18, 19
*Richardson v. Richardson-Merrell, Inc.*,
  857 F.2d 823 (D.C. Cir. 1998) ............................................................... 10, 11
*Schmidt v. City of Bella Villa*,
  557 F.3d 564 (8th Cir. 2009) ..................................................................... 13
*Smith v. Ingersoll-Rand Co.*,
  214 F.3d 1235 (10th Cir. 2000) ................................................................... 13
*Specht v. Jensen*,
  853 F.2d 805 (10th Cir. 1988) ............................................................... 11, 13
*Taylor v. Evans*,
  No. 94 Civ. 8425 (CSH), 1997 WL 154010 (S.D.N.Y. Apr. 1, 2007) ..................... 19
*Thompson v. State Farm Fire and Cas. Co.*,
  34 F.3d 932 (10th Cir. 1994) ..................................................................... 20
*Tyus v. Urban Search Mgmt.*,
  102 F.3d 256 (7th Cir. 1997) ...................................................................... 5
*U.S. v. Nacchio*,
  555 F.3d 1234 (10th Cir. 2009) ................................................................. 5, 6
*U.S. v. Velarde*,
  214 F.3d 1204 (10th Cir. 2000) ................................................................... 5
*United States v. Rodriguez-Felix*,
  450 F.3d 1117, 1123 (10th Cir. 2006) ........................................................... 16
*United States v. Wood*,
  207 F.3d 1222 (2000) ............................................................................. 13
*Werth v. Makita Electric Works, Ltd.*,
  950 F.2d 643 (10th Cir. 1991) .................................................................... 11
*Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*,
  254 F. 3d 706 (8th Cir. 2001) ..................................................................... 7
*Whitley v. Albers*,
  475 U.S. 312 (1986) ............................................................................... 14
*Wilson v. Muckala*,
  303 F.3d 1207 (10 Cir. 2002) ...................................................................... 5
*Wilson v. Seiter*,
  501 U.S. 294 (1991) ........................................................................... 14, 15
*Wofford v. Bonilla*,
  CIV-07-013-KEW, 2008 WL 2517155 (E.D. Okla. 2008) ............................... 11

**<u>Rules</u>**

Fed. R. Evid. 401-403, 701-702 ........................................................................ 20

FRE 403 .............................................................................................................. 16

Rule 702 of the Federal Rules of Evidence ............................................... passim

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| XOUCHI JONATHAN THAO,<br>Special Administrator for the Estate<br>of KONGCHI JUSTIN THAO, | )<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | )<br>) | Case No. CIV-19-1175-JD |
| GRADY COUNTY CRIMINAL JUSTICE<br>AUTHORITY; et al., | )<br>)<br>) | |
| Defendants. | )<br>) | |

## DEFENDANT'S MOTION AND BRIEF TO EXCLUDE
## EXPERT TESTIMONY OF ANASSERIL DANIEL, M.D.

## <u>BRIEF IN SUPPORT</u>

Defendant hereby moves to exclude or limit the testimony and evidence of Anasseril Daniel, M.D. (hereinafter "Dr. Daniel"), Plaintiff's purported "correctional mental health and psychiatry expert witness", in accordance with the principles of *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), and Rule 702 of the Federal Rules of Evidence. As discussed herein, Dr. Daniel should be excluded from testifying about the use of force and whether jail staff were deliberately indifferent to Decedent's risk of suicide, (1) Dr. Daniel lacks the requisite qualifications, knowledge and experience to provide such expert testimony; (2) Dr. Daniel's proposed testimony on these subjects is unreliable, speculative

and do not fit the evidence, and (3) his testimony on these subjects will be unhelpful to the jury.

## I.      **INTRODUCTION AND STATEMENT OF THE CASE**

Plaintiff Jonathan Thao brings this case as the personal representative of the Estate of Justin Thao ("Decedent") arising out of Decedent's brief incarceration at the Grady County Detention Center in November 2017.

On March 22, 2017, Decedent was indicted on charges of Conspiracy to Possess a Controlled Substance with Intent to Distribute and Possession of a Controlled Substance with Intent to Distribute in the United States District Court for the Western District of Texas El Paso Division. In October of 2017, Decedent was sentenced to 12 months and 1 day in federal prison. Decedent was incarcerated in Otero County, New Mexico for a brief period of time and on November 13, 2017, the U.S. Department of Justice cleared Decedent for transport from New Mexico to the Los Angeles Metropolitan Detention Center. On November 15, 2017, Decedent arrived at the Grady County Detention Center along with other "turn-around" inmates, meaning that the federal inmates would be in the facility for just a few hours before continuing their travel to California.

Decedent arrived at the facility at 6:05 p.m. and was placed in a holding pod with the other federal inmates. At 2:38 a.m., a female jail nurse and a male detention officer opened the door of the pod to pass medications. The federal turn-around inmates were scheduled to leave the facility and continue on their way in a little over two hours. Decedent did not have any medications and had no reason to approach the door; however, Decedent charged at the open door and toward the nurse. An officer radioed to the other jail staff for

2

"all available officers" to respond and assist. The detention officer took Decedent to the ground and cuffed his hands behind his back.

Detention officers promptly responded to the fourth floor to aid in controlling the Decedent. Detention Officer Trevor Henneman entered the fourth floor elevator and saw other detention officers struggling with Decedent, who was on the floor of the elevator. Despite being cuffed at the hands, Decedent was thrashing his body around, kicking, and resisting all efforts to calm him down. As Decedent posed a risk of harm to himself and the other officers, Henneman instituted a drive-stun with his taser on Decedent's thigh for approximately two seconds. The taser had the desired effect and Decedent nearly immediately ceased kicking and physically resisting.

The officers took Decedent to a cell near the sally port area in which he could be housed alone so he could calm down. Decedent was placed in a single cell at 2:42 a.m. Decedent's cell was near the entrance to the jail sally port where he was scheduled to be loaded on a bus to be transported to the airport in Oklahoma City later that morning. Detention officers performed a visual sight check on the Decedent at 3:07 a.m. After being placed in the single cell, Decedent continued to intermittently shout back and forth with an inmate housed in the cell next to him until approximately 4:10 a.m. At 4:21 a.m., Detention Officer Trevor Henneman went to retrieve Decedent to ready him for transport from the facility. At that time, Officer Henneman discovered Decedent hanging by the neck from a towel on the handle of the door. Rescue efforts were immediately initiated. Decedent was transported to the hospital where it was determined he had methamphetamine in his system.

Decedent later died at the hospital. The Estate retained Mr. Daniel to perform a forensic psychiatric analysis of the Decedent.

Plaintiff, as representative of Decedent's Estate, has sued Defendant alleging *Monell* claims for excessive force and that jail staff failed to protect the Decedent from a substantial risk of death or serious harm from suicide. In support of his claims, Plaintiff retained Mr. Daniel to provide expert testimony as to the psychiatric state of the Decedent at the time of the incident in question. As demonstrated herein, Mr. Daniel's testimony should be excluded. Plaintiff, as representative of Decedent's Estate, has sued, *inter alia,* Defendant alleging excessive force and denial of medical care in violation of the Eight Amendment's prohibition on cruel and unusual punishment. In support of his claims, Plaintiff retained Dr. Daniel to provide expert testimony. As demonstrated herein, Dr. Daniel's expert testimony specifically regarding use of force, de-escalation, taser use, and the mental health training provided to GCCJA staff should be excluded.

## II.   <u>ARGUMENT AND AUTHORITY</u>

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993). Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reasonably to the facts of the case.

Trial courts have broad discretion under FRE 702 to admit or exclude expert testimony. *U.S. v. Velarde*, 214 F.3d 1204, 1208 (10th Cir. 2000); *Quinton v. Farmland Indus., Inc.*, 928 F.2d 335, 336 (10th Cir. 1991). *Daubert* charges the trial court to ensure both the relevance and the reliability of the proposed testimony: "[U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (non-scientific expert testimony). Proffered expert testimony "must be tested to be sure that the person possesses genuine expertise in a field. . . . [T]he district court must ensure that it is dealing with an expert, not just a hired gun." *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1997). This "gatekeeping" obligation applies not just to scientific testimony, but to all proffered expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49, 119 S.Ct. 1167 (1999). Whether testifying based on professional studies or personal experience, an expert must employ the same level of intellectual rigor in the courtroom that characterizes the practice of an expert in the relevant field. *Id*.

> The 'touchstone' of admissibility of expert testimony is its helpfulness to the trier of fact. When the normal experiences and qualifications of laymen jurors are sufficient for them to draw a proper conclusion from given facts and circumstances, an expert witness is not necessary and is improper.

*Wilson v. Muckala*, 303 F.3d 1207, 1219 (10 Cir. 2002) (internal citations and quotation marks omitted). Furthermore, it is the proponent of expert testimony who bears the burden of showing that his expert's proposed testimony is admissible. *U.S. v. Nacchio*, 555 F.3d

1234, 1241 (10th Cir. 2009) (citing *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001)).

In the Tenth Circuit, the *Daubert* gatekeeping function is undertaken by means of a two-step analysis. *Graves v. Mazda Motor Corporation*, 675 F. Supp. 2d 1082, 1092 (W.D. Okla. 2009) (citing *Ralston v. Smith &Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001)); *see also Milne v. USA Cycling Inc.*, 575 F. 3d 1120, 1133 (10th Cir. 2009); *Nacchio*, 555 F.3d at 1241. First, a court must determine whether the proffered expert is qualified by "knowledge, skill, experience, training, or education" to render an opinion. *Nacchio*, 555 F.3d at 1241.  An expert's qualifications must directly relate to the issues on which he or she intends to testify. It is not sufficient that the proffered expert has a basic understanding of the subject and some experience in the area. Even if qualified to testify, the expert's testimony must be confined to his specific area of expertise. *See Broadcourt Capital Corp. v. Summa Medical Corp.*, 972 F.2d 1183, 1195 (10th Cir. 1992). Second, if the witness is qualified, the court must determine whether his opinions are reliable. *Ralston*, 275 F.3d at 969. Some of the factors a trial court may consider in determining whether expert testimony is reliable include: (1) whether a theory or technique can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a particular technique has a high known or potential rate of error; (4) whether there are standards controlling the technique's operation; and (5) whether a theory or technique enjoys general acceptance within a relevant scientific community. *Kuhmo*, 526 U.S at 149-150 (citing *Daubert*, 509 U.S. at 592-594).

In the instant case, Dr. Daniel should not be permitted to testify under either part of the aforementioned two-step analysis. As is discussed in Section A below, Dr. Daniel is not qualified to offer opinions on law enforcement use of force in this case. Furthermore, as discussed in Sections B and C below, opinions which Dr. Daniel would otherwise offer on use of force in this case are not relevant or reliable and would not be helpful to the trier of fact. As such, Dr. Daniel should be excluded as an expert witness in this case or, in the alternative, his opinions should be limited.

### A.   DR. DANIEL DOES NOT HAVE THE REQUISITE EXPERIENCE OR TRAINING SUFFICIENT TO QUALIFY HIM TO PROVIDE RELIABLE EXPERT OPINIONS.

Dr. Daniel has provided psychiatric services in the United States since 1974. (See Exh. 1 - Deposition of Daniel, p. 12, lines 2-15). While he has had experience working in correctional facilities, he reported no experience working as a detention officer or jailer. (See generally Exh 2 - Daniel CV, pp. 1-4). Dr. Daniel stated he has experience opining on policies, procedures, and practices of correctional facilities as related to inmates, yet he readily admits he is not an expert on the use of force, including intermediate levels of force like the use of a taser, on inmates. (See Exh 1 - Depo of Daniel, p. 110, lines 3-13; p. 56, lines 22-23; p. 112, lines 2-11).

Dr. Daniel's training and experience working in the field of inmate psychiatry may be enough for the Court to conclude that he qualifies as an expert under Rule 702 for some purposes. However, "the real question," as *Graves* asked, is "what is he an expert about?" *Graves*, 675 F. Supp. 2d at 1093 (quoting *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F. 3d 706, 715 (8th Cir. 2001)). Under *Ralston*, the qualifications

of a proposed expert are to be assessed only after the specific matters he proposes to address have been identified. *Id.* at 1093 (citing *Ralston*, 275 F.3d at 979). The expert's qualifications must be both adequate in a general qualitative sense and specific to the matters the expert proposes to address as an expert. *Id.*

The requirement that an expert possess knowledge, skill, experience, training, or education directly related to the issues of the case has been construed narrowly by the Tenth Circuit. In *Ralston*, the plaintiff brought a products liability action against a medical device manufacturer alleging failure to warn of the risks associated with a particular orthopedic nail to treat a fracture of her femur. *Ralston*, 275 F.3d at 968. The plaintiff's proffered expert witness was a board certified orthopedic surgeon with expertise in the treatment of and problems of healing bone that had been subjected to radiation treatment. *Id.* at 969. However, the expert had not done research in the specific area of intramedullary nailing. *Id.* The court excluded the testimony, holding that the simple possession of a medical degree is not sufficient to qualify a physician to testify concerning any medical-related issue. *Id.* at 970.

In *Milne*, the plaintiffs brought claims of negligence and gross negligence against the organizers of a cross-county mountain bike race in which one plaintiff's decedent was killed and the other plaintiff was seriously injured when they struck an SUV and its trailer on the open road portion of the race. *Milne*, 575 F.3d at 1123. The plaintiffs' expert was a police officer who had investigated hundreds of vehicle-bicycle collisions and who had experience organizing and supervising paved road bike races. *Id.* at 1133. The Tenth Circuit concluded this experience was insufficient to qualify the expert to testify about

8

mountain bike races, which are governed by different rules and practices than traditional road races. *Id.*

Dr. Daniel admits he does not claim any expertise in use of force and conceded that he is not an expert on the subject, whether broadly or narrowly tailored to the present matter. (See Exh. 1 - Depo of Daniel, p. 56, lines 19-24; p. 112, lines 2-11). Dr. Daniel testified that not only is he not an expert on tasers as a whole, he also is not an expert on the proper use of a taser. (See Exh. 1 - Depo of Daniel p. 56, lines 19-21; p. 111, lines 7-9). He also agreed that he has not evaluated detention officer's use of force under constitutional standards. (Exh. 1 - Depo of Daniel, p. 113, lines 1-10).

In apparent acknowledgment of his lack of qualifications on the issue, Dr. Daniel agreed that he would not provide expert opinions regarding any detention officer's technique when he used the taser or whether a law enforcement officer's use of a taser is reasonable. (See Exh. 1 - Depo of Daniel, p. 107, lines 22-25; p. 108, lines 1-4). He further conceded that he could offer no opinion as to whether Decedent even felt pain when the taser was used or whether there was any causal link between the less-than-two-second tase and the hours-later suicide. (See Exh. 1 - Depo of Daniel, p. 114, lines 2-17).

Despite these concessions, Dr. Daniel still intends to express opinions related to detention officers' use of the taser on Decedent. (Exh. 3 - Daniel Expert Report, pp. 3-4, 5-7). Specifically, he has opined repeatedly that detention officer Henneman should not have used the taser and, instead, should have attempted de-escalation techniques like talking with the Decedent before resorting to the use of force. (See Exh. 1 - Depo of Daniel, p. 57, lines 5-19; p. 74, lines 11-18; p. 75, lines 1-10; p. 76, lines 1-12; p. 91, lines 18-25;

p. 92, line 1; p. 93, lines 4-6; p. 107, lines 3-14; p. 109, lines 6-13; p. 113, lines 17-19). As

discussed herein, Dr. Daniel lacks the requisite qualifications to offer such an opinion.

Plaintiffs' "expert" who has openly and repeatedly opined about detention officer's

use of force by deployment of a taser on Decedent is, in relevant part, a forensic psychiatrist

whose professional specialty relates to providing consultation to social workers, mental

health professionals, and physicians on the suicidality of inmates. In fact, he has readily

admitted that he is not an expert on the use of force and that he lacked fundamental

knowledge of the use or utility of taser. Accordingly, Dr. Daniel is not qualified to be an

expert in the use of force, as it relates to the incident at issue herein and any opinion he

may offer at trial would be unreliable, confusing, and unhelpful to the jury.

## B.    DR. DANIEL'S OPINIONS ARE UNRELIABLE

### 1.    Inadmissible Legal Conclusions

Dr. Daniel's opinions and report also fail to meet the minimum standard for

admissibility under Rule 702 and *Daubert*. As stated in *Christiansen v. City of Tulsa*, 332

F.3d 1270, 1283 (10th Cir. 2003), "Generally, an expert may not state his or her opinion as

to *legal standards*, nor may he or she *state legal conclusions drawn by applying the law to

the facts*." [quoting *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998)]

(emphasis added.) . . .  *Whether defendants* in this case acted "intentionally" is a legal

conclusion and, thus, the district court properly excluded that portion of Dr. Crass'

affidavit." (emphasis added). "An expert who supplies nothing but a bottom line supplies

nothing of value to the judicial process." *Mid-State Fertilizer Co. v. Exch. Nat. Bank of

Chicago*, 877 F.2d 133, 1339 (7th Cir. 1989) [citing *Richardson v. Richardson-Merrell,*

*Inc.*, 857 F.2d 823, 829-32 (D.C. Cir. 1998) (holding that an expert's declaration, full of assertion but empty of facts and reasons, wo[uld not] get a case past a motion for summary judgment, for the court must 'look behind [the expert's] ultimate conclusion . . . and analyze the adequacy of its foundation.'")] While Federal Rule of Evidence 704(a) allows an expert witness to testify as to the ultimate matter at issue, testimony on questions of law, such as legal opinions or legal conclusions, is not favored. *Anderson v. Suiters*, 499 F.3d 1228, 1237 (10th Cir. 2007); see also *Specht v. Jensen*, 853 F.2d 805, 810 (10th Cir. 1988) ("In no instance can a witness be permitted to define the law of the case.); *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1283-84 (10th Cir. 2003) ("Generally, an expert may not state his opinions as to legal standards nor may he or she state legal conclusions from applying the law to the facts," finding that the opinion of the expert that a defendant acted "recklessly" was an improper legal conclusion."); *Werth v. Makita Electric Works, Ltd.*, 950 F.2d 643, 649-50 (10th Cir. 1991) ("Certainly the court, not an expert, instructs the jury on the proper legal standard to apply.").

Allowing an expert to opine about the law usurps the court's role in determining the law and instructing the jury. *See Werth*, 950 F.2d at 650; *Wofford v. Bonilla*, CIV-07-013-KEW, 2008 WL 2517155, *3 (E.D. Okla. 2008); *Burkhart v. Washington Met. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 197).

In the present case, Dr. Daniel has repeatedly proffered opinions based neither upon reliable principles nor upon a sound foundation as prescribed in *Daubert*. Rather, Dr. Daniel has merely espoused conclusory statements as to his beliefs that the officers involved in this matter were either not justified in using force on the Decedent and were

11

"grossly indifferent [the Decedent's] serious medical need." The following are Dr. Daniel's

opinions that constitute impermissible narration of facts, as well as legal conclusions, and,

thus, should be excluded:

- "No. 7 you say the officers were grossly indifferent. What does that mean, grossly indifferent? They disregarded substantially the serious medical need, which is a suicide risk that Mr. Thao was demonstrating at the time he was in Grady County Jail. So they filed to recognize the serious suicide risk, failed to take appropriate action, and that was gross disregard or indifference to his medical need." (Exh. 1 - Depo of Daniel, p. 99, lines 23-25).

- "As I have indicated in my report, de-escalation techniques should have been used to calm [Thao] down. So that means the stun gun should have been avoided." (Exh. 1 - Depo of Daniel, p. 57, lines 17-19).

- "I think I asked this already but who do you think, what jailer or person do you feel was deliberately indifferent to Mr. Thao? […] All officers who were on duty that particular night at Grady County Jail." (See Exh. 1 - Depo of Daniel, p. 104:25-105:5).

- "The officers were grossly indifferent to Mr. Thao's serious medical need, i.e., imminent suicide risk." (Exh. 3 - Daniel Expert Report, p. 6, paragraph 7, line 1).

- "I don't know, you know, if [the officers' taking Thao down] would have been appropriate procedure. My testimony is they should have asked him what is going on with him. He was not—he was not threatening anybody." (Exh. 1 - Depo of Daniel, p. 74, lines 14-18).

- A reasonable jailer should have recognized that Thao was experiencing a mental health crisis. (See Exh. 1 - Depo of Daniel, p. 89, lines 23-25).

- ". . . I conclude with a reasonable degree of medical and professional certainty that Grady County Justice Authority and its staff were grossly indifferent to Mr. Thao's serious medical need, i.e., imminent suicide risk by failing to properly screen him for suicide risk. (Exh. 3 - Daniel Expert Report, p. 7, paragraph 3, line 1).

- "If such a medical triage screening was performed [immediately upon admission], his mental health crisis could have been identified, leading to appropriate medical/psychiatric intervention, including suicide watch or observation." (Exh. 3 - Daniel Expert Report, p. 6, paragraph 6, lines 1-3).

The Tenth Circuit has repeatedly rejected the same type of legal conclusions now offered by Dr. Daniel. *See Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988); *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1246 (10th Cir. 2000) ("Expert testimony on legal issues crosses the line between the permissible and impermissible when it attempts to define the legal parameters within which the jury must exercise its fact-finding function."); *United States v. Wood*, 207 F.3d 1222 (2000). In *Schmidt v. City of Bella Villa*, 557 F.3d 564 (8th Cir. 2009)*, the plaintiff presented a "police practices expert" to testify regarding the reasonableness of police conduct in light of Fourth Amendment standards. The district court rejected this proposed testimony, finding that the plaintiff's proposed expert opinions regarding the reasonableness of the evidence collection and strip search procedures were impermissible legal conclusions. 557 F.3d at 570. This rejection was affirmed on appeal. The Eighth Circuit confirmed that the expert's report **"consisted of his opinions regarding the overall reasonableness of the procedures used and, as such, were not fact-based opinions."** 557 F.3d at 570 (emphasis added); *see also Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (expert testimony on reasonableness of police behavior in light of Fourth Amendment standards is a statement of legal conclusions and not admissible).

Additionally, Dr. Daniel's conclusions are speculative and confusing. Dr. Daniel reasons that if staff had performed a medical triage screening immediately upon admission to the facility the Decedent's "mental health crisis could have been identified, leading to appropriate medical/psychiatric intervention, including suicide watch or observation." (Exh. 3 - Daniel Expert Report, p. 6, paragraph 6, lines 1-3). This theory is not supported by any facts and even conflicts with Dr. Daniel's own testimony at his deposition as to when the Decedent became suicidal. (*See* Exh. 1 - Depo of Daniel, p. 78, lines 20-25). Dr. Daniel admits but that he cannot pinpoint at which point the Decedent became suicidal but states that it was after the incident involving the use of force in the elevator. This means that a medical triage screening performed immediately upon Decedent's admission could not have identified him as suicidal and suicide watch as an appropriate psychiatric intervention.

Dr. Daniel's opinions of the interaction between detention officers in the elevator and Thao during the incident misstate the legal standard for an excessive force claim against a convicted inmate. *Geddes v. Weber Cnty.*, No. 20-4083, 2022 WL 3371010 at *4 (10th Cir. 2022) quoting *Porro v. Barnes,* 624 F.3d 1322, 1325-26 (10th Cir. 2010); *see also Est. of Booker v. Gomez*, 745 F.3d 405, 19 (10th Cir. 2014) ("[C]laims of excessive force involving convicted prisoners arise under the Eighth Amendment."). As a threshold matter with regard to excessive force claims, United States Supreme Court precedent holds that the Eighth Amendment protects a prisoner from "the unnecessary and wanton infliction of pain." *Whitley v. Albers,* 475 U.S. 312, 319 (1986). ("Only the 'unnecessary and *wanton* infliction of pain' implicates the Eighth Amendment." *Wilson v. Seiter,* 501

14

U.S. 294, 297 (1991)). "The question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Hudson v. McMillian,* 503 U.S. 1, 6 (1992) (citing *Whitley*, 475 U.S. at 319). Dr. Daniel insinuates liability on behalf of the Defendant with language that suggests detention officers "should not" have used the taser on Thao because, in Dr. Daniel's interpretation of fact based solely on his review of the video of the incident, in those split-seconds there could have existed the potential to simply talk to Thao. Dr. Daniel's framing of the incident is wholly incompatible with the legal standard involved therein and allowing these opinions would create a substantial risk of misleading the jury on the issues.

Dr. Daniel's opinions do not assist the jury or the Court in reaching the ultimate fact and legal determinations. Dr. Daniel's opinions invade the purview of the Court by offering legal conclusions as to whether detention officers were justified in their use of force on Thao and whether they were deliberately indifferent to a serious risk of suicide. Plaintiff is clearly attempting to use this purported expert to lecture the jury and this Court on Plaintiff's own self-serving legal conclusions that Defendants are liable for injuries sustained by Thao, all under the guise of "expert testimony." Dr. Daniel's framing of the issue of use of force is also incompatible with the proper legal standard and would improperly mislead the jury. These legal conclusions are outside the realm of admissible expert testimony and should be excluded.

### 2.       Dr. Daniel is Not Qualified by His Own Gathering of Facts

In reviewing whether an expert's testimony is reliable, the trial court must "assess the reasoning and methodology underlying the expert's opinion[.]" *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006) (internal citations and quotations omitted). "[A]n expert's scientific testimony must be based on scientific knowledge, which 'implies a grounding in the methods and procedures of science' based on actual knowledge, not 'subjective belief or unsupported speculation.'" *Id.* In this instance, Dr. Daniel's expert opinions are unreliable based upon his own deficiencies in gathering facts. Prior to providing his report and making his conclusions, Dr. Daniel failed to consider any testimony of detention officers other than Jimmy Duncan and Johnny Farley. Even in considering the deposition testimony of Duncan and Farley, Dr. Daniel's consideration of their testimony was incomplete and selective. He asserts in his report Duncan reported having not received training on how to identify mental health issues in prisoners in approximately the last ten years and selectively cites to one portion of Duncan's deposition. He failed to consider the numerous other portions of Duncan's deposition where he indicated that he *had* received training on how to identify mental health episodes. (Exh. 4 - Depo of Duncan, p. 29:16-30:21; p. 34:9-25). In fact, Dr. Daniel directly misquotes Duncan's deposition regarding how long it had been since he had received this training. (Exh. 4 - Depo of Duncan, p. 44:3-15). Dr. Daniel further admitted that training materials from the jail consisting of power point training slides for identifying and dealing with mental health crises in jails and possible suicide risks were "helpful" and "accurately point out to the risk factors and situations where an inmate could be identified as a suicide risk."

16

(*See* Exh. 1 - Depo of Daniel, p. 102, lines 9-16). However, he discounted these training materials as he "ha[d] not seen evidence that Jail staff were aware of the slides, understood them, or were trained on them." (Exh. 3 - Daniel Expert Report, p. 6, paragraph 1, lines 4-5). If he had reviewed the deposition of Lt. Johnnie Drewery, he would have seen evidence showing that these materials were taught at the jail on more than one occasion. (Exh. 5 - Depo of Drewery, p. 144:9-145:15; p. 147:4-147:24). That is in addition to other training on mental illness and the mentally ill that were taught at the jail. (Exh. 5 - Depo of Drewery, p. 158:2-23).

Dr. Daniel also failed to review the deposition of the detention officer who deployed the taser in this case, Trevor Henneman. Despite Dr. Daniel's complete ignorance as to what Henneman observed and testified to about the incident, he offers numerous opinions as to the conduct by Henneman. (See Exh. 1 - Depo of Daniel, p. 57, lines 5-19; p. 74, lines 11-18; p. 75, lines 1-10; p. 76, lines 1-12; p. 91, lines 18-25; p. 92, line 1; p. 93, lines 4-6; p. 107, lines 3-14; p. 109, lines 6-13; p. 113, lines 17-19). These include what Henneman's state of mind was when he used the taser, the legitimate and penological reasons for using the taser, and the fact that Henneman testified he unequivocally did not intend to cause any harm to Decedent when he used the taser. (See Exh. 1 - Depo of Daniel, p. 6-8; p. 107, lines 15-17; Exh. 6 - Depo of Henneman, p. 154, lines 6-21).

Dr. Daniel's failure to perform a complete review of material in this case is indicative of a failure to employ any valid scientific methodology. Under *Daubert*, "any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999).

17

Additionally, Dr. Daniel never reviewed certain items which would have otherwise provided helpful information regarding Decedent and his mental state at the time of the use of force and subsequent suicide, such as his past medical, psychological, or psychiatric records, his juvenile records, his criminal history, records detailing his communications with others, records suggesting any potential gang affiliation, or documents detailing Decedent's history of substance abuse. (See Exh. 1 - Depo of Daniel, p. 117, lines 17-25; p. 118, lines 1-16; p. 119, lines 5-19; p. 120, lines 4-11).

Thus, as Dr. Daniel's opinions and anticipated trial testimony amount to nothing more than inadmissible legal conclusions and as they are misleading, unqualified, and prejudicial opinions and should be excluded.

### C.   DR. DANIEL'S TESTIMONY IS UNHELPFUL TO THE JURY

#### 1.   Surveillance Video

It is undisputed that there are multiple videos depicting Decedent's entire stay at the jail. A large portion of Dr. Daniel's Professional Opinions report essentially narrates what is seen on the video. (See Exh. 3 - Daniel Expert Report, p. 3, paragraphs 1-5; p. 4, paragraphs 1-9; p. 5, paragraphs 10, 14; p. 6, paragraphs 1-4). Such is not "expert testimony." The video speaks for itself and testimony by Dr. Daniel regarding his observations of the video is unhelpful to the jury as he has no specialized skill in analyzing video evidence and will provide no additional information regarding the video that the jury cannot determine simply by reviewing the video. *See Cornwell v. Union Pacific R.R.*, No. 08-CV-638-JHP, 2010 WL 3521674 *4 (Sept. 7, 2010) (not reported); *Redd v. Abla-Reyes*, No. 12-465 (MJD/JSM), 2013 WL 6036697 *2 (D. Minn. Nov. 14, 2013) (excluding expert

18

witness testimony of "what happened in surveillance video because he has no special expertise in interpreting video images and the ability to discern the images in the video is within the jury's knowledge or experience."); *Great Northern Ins. Co. v. Ruiz*, 688 F. Supp. 2d 1362, 1374-75 (S.D. Ga. 2010) (Expert who viewed video surveillance to support a conclusion was not helpful when the trier of fact could watch the video and make his or her own determination); *Lee v. Andersen*, 616 F.3d 803, 808 (8th Cir. 2010) (upholding exclusion of expert testimony "based on his observation of the video as he did not employ any technique or utilize any special skill that is unavailable to the jury."). "[A]n expert cannot be presented to the jury solely for the purpose of constructing a **factual narrative** based upon record evidence." *Highland Management, L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005) (emphasis added); *Taylor v. Evans*, No. 94 Civ. 8425 (CSH), 1997 WL 154010 *2 (S.D.N.Y. Apr. 1, 2007) (rejecting portions of expert report on grounds that the testimony consisted of a "narrative of the case which a lay juror is equally capable of constructing.")

In this case, Dr. Daniel's report and testimony include lengthy narratives in which he does little more than regurgitate what can be seen on the video and offer his conclusory "expert spin." Dr. Daniel's narrative testimony is not useful or helpful to the trier of fact, who can view the video itself and make its own conclusions therefrom. Rather, Dr. Daniel's narrative testimony "appears to simply be [his] conclusions on the evidence. That role is for the jury." *Ecker v. Allstate Ins. Co.*, No. CIV-00-1367-C, 2001 WL 36113435 *1 (W.D. Okla. Apr. 9, 2001). Dr. Daniel's testimony, to the extent that it merely describes what happens on the video, should be excluded as it invades the province of the jury.

19

### 2.      Dr. Daniel's Testimony Should be Excluded Under FRE 403

Finally, even if some of Dr. Daniel's testimony is considered admissible expert testimony under Fed. R. Evid. 702, the Court should nevertheless exclude Dr. Daniel as an expert under Fed. R. Evid. 403. In *Daubert*, the court noted that, "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595. "Expert testimony, like any other evidence, is subject to exclusion if it fails the Fed. R. Evid. 403 balancing test…" *Thompson v. State Farm Fire and Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994).

Dr. Daniel's opinions consist of legal opinions and conclusions, mere narration of the available video, confusing and misleading testimony, and other matters within the exclusive province of the Court and jury. Accordingly, Dr. Daniel should be prohibited from testifying at trial as an expert witness.

## III.   <u>CONCLUSION</u>

Although Rule 702 allows an expert to provide opinion testimony when scientific, technical, or other specialized knowledge will assist the trier of fact, the court has a well-established responsibility to exclude such testimony when the purported expert is unqualified, offers unreliable opinions, or makes inadmissible conclusions regarding legal standards. Restrictions placed on admissibility do not permit an expert to instruct the jury on the law, nor do they allow an expert to attempt to read the minds of individuals or entities, or offer unsupported opinions as to their motive, intent, and states of mind.

Dr. Daniel, his report, and much of his testimony fail to meet the requirements of admissible testimony on all fronts. His testimony consists largely of inadmissible, unreliable opinions. Furthermore, he is unqualified to present any opinions to the jury regarding use of force based on his complete lack of education or experience with hands-on use of force, as well as his limited review of relevant evidence in the case. Similarly, he failed to utilize any recognizable scientific methodology in his analysis based upon his selective or incomplete review of the evidence in the case regarding the training of detention officers. For these reasons, Defendant respectfully requests this Court enter an order prohibiting Plaintiff from offering expert testimony of Dr. A.E. Daniel or, at the very least, limiting his opinions accordingly.

Respectfully submitted,


s/W.R. Moon Jr.
Andy A. Artus, OBA No. 16169
W.R. Moon, OBA No. 32079
COLLINS, ZORN & WAGNER, PLLC
429 N.E. 50th Street, Second Floor
Oklahoma City, OK  73105
Telephone:   (405) 524-2070
Facsimile:    (405) 524-2078
Email:          aaa@czwlaw.com
                     wrm@czwlaw.com

ATTORNEY FOR DEFENDANTS
GRADY COUNTY CRIMINAL
JUSTICE AUTHORITY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 21, 2023, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

J. Spencer Bryan
Steven J. Terrill
BRYAN & TERRILL, PLLC
2500 S. Broadway, Suite 122
Edmond, OK 73013
sjterrill@bryanterrill.com
jsbryan@bryanterrill.com

Glenn Katon
Katon.Law
385 Grand Ave., Ste. 200
Oakland, CA 94610
gkaton@katon.law

***Attorneys for Plaintiffs***

s/W.R. Moon, Jr.
W.R. Moon, Jr.